IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COLIN C. MOYNIHAN,                    :    CIVIL ACTION
                                      :    NO. 17-0772
          Plaintiff,                  :
                                      :
     v.                               :
                                      :
RITE AID CORPORATION,                 :
                                      :
          Defendant.                  :


M E M O R A N D U M


EDUARDO C. ROBRENO, J.                        August 8, 2018



          Plaintiff Colin C. Moynihan ("Moynihan") brings this
case against his former employer, Rite Aid, for disability
discrimination in violation of the Americans with Disabilities
Act ("ADA"). The facts of this case are largely uncontested. For
example, it is uncontested that Moynihan has been diagnosed with
Asperger's Syndrome, and thereby has a disability. It is also
uncontested that he was fired after he missed two scheduled work
shifts during his new employee probationary period, and that
Rite Aid's decision-maker who fired Moynihan had no knowledge of
his disability prior to terminating his employment.

Both parties have filed motions for summary judgment, and both motions have been fully briefed and are ripe for disposition. For the reasons set forth below, the Court will deny Moynihan's motion and grant Rite Aid's.

## I.   FACTUAL BACKGROUND

In June 2016, sometime after being diagnosed with Asperger's Syndrome, Moynihan was hired by Rite Aid, subject to a ninety-day probationary period as a new employee. At no time during the application, interview, and hiring process did Moynihan inform anyone at Rite Aid about his disability, or request any accommodations. E.g., Moynihan Dep. 21:3-6, ECF No. 80; Def's Mot. Ex. B, ECF No. 98. On July 10, 2016, Moynihan did not report for his scheduled shift, nor did he call out of work. Moynihan Dep. 41:14-18; 44:3-5. On August 13, 2016, Moynihan again did not show up for or call out of his scheduled shift. E.g., Moynihan Schedule, Def's Mot. Ex. P, ECF No. 98-4. Later that day, Moynihan called Rite Aid assistant manager Brian Winston ("Winston") on the telephone and apologized for missing his shift. Moynihan Dep. 46:7-14. Winston told Moynihan that because he had twice missed shifts without calling out he was subject to termination under Rite Aid's policies. Id. Moynihan did not disclose his disability to Winston during this telephone conversation. Id. at 46:19 to 47:4.

Shortly thereafter, on August 14, 2016, Rite Aid manager Randy Barron ("Barron") informed Moynihan that he was terminated due to the two missed shifts. Barron Dep. 19:12-18, ECF No. 98-5. Importantly, it is uncontested that although Barron conveyed the notice of termination to Moynihan, the person who made the termination decision was Rite Aid Human Resources employee Casey Long ("Long"). Subsequently, Moynihan contacted Long and disclosed his disability, and requested that Long rehire him. Id. Moynihan also requested that the terms of this new employment include various accommodations for his disability. Id. Long declined to rehire Moynihan because of the missed shifts. Id.

In addition to his post-termination disclosure to Long, Moynihan contends that he disclosed his disability to Winston during an in-person conversation that occurred on a different, later date than their telephone conversation described above (during which there was no disclosure.) See, e.g., Pl's Br. ¶ 5, ECF No. 99. Although it is not clear when the disclosure to Winston occurred relative to Long's decision to fire Moynihan, it is clear that it was after Moynihan missed the second shift. Importantly, in any event, there is no evidence that Winston ever communicated this information to anyone, including Long.

## II. PROCEDURAL HISTORY

Moynihan filed a complaint on February 23, 2017, claiming that Rite Aid discriminated against him in violation of the ADA. ECF No. 3. Rite Aid filed its answer on May 22, 2017. ECF No. 8.

Moynihan is proceeding in forma pauperis and pro se.[1] See ECF Nos. 1, 2. On February 15, 2018, after some exchange of

---

[1] By way of background, in response to Moynihan's request for appointment of counsel, ECF No. 4, the Court referred the case to the Employment Panel. ECF No. 14. As a result, David M. Koller, Esquire accepted appointment by the Court to represent Moynihan. ECF No. 17. However, Moynihan then informed the Court that he had declined Attorney Koller's representation, and intended to proceed pro se. See ECF No. 22. Accordingly, the Court permitted the withdrawal of Attorney Koller's entry of appearance. Id.

To the extent that Moynihan attempts to use his pro se status to obtain more favorable treatment, the Court notes that while it liberally construes his pleadings, it evenly applies the rules and law. See Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011) (noting that pro se pleadings should be liberally construed). This means that the Court is "willing to apply the relevant legal principle even when the [pro se pleading] has failed to name it." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244 (3d Cir. 2013) (citing Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003)). Still, "[a]t the end of the day, [pro se litigants] cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." Id. at 245 (citing McNeil v. United States, 508 U.S. 106, 113 (1993). For example, "pro se litigants still must allege sufficient facts in their complaints to support a claim." Id.; see also McNeil, 508 U.S. at 113 ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

And yet, the Court has granted many requests by Moynihan for accommodations. For example, the Court granted

discovery, Rite Aid moved for summary judgment. ECF No. 76.

Subsequently, Moynihan informed the Court that he required

additional discovery, ECF No. 77, which the Court accommodated.

See ECF No. 78. Moynihan then filed his own motion for summary

judgment. ECF No. 85. Shortly thereafter, Moynihan again

informed the Court that he had not been able to complete all

necessary discovery. ECF No. 87. In response, the Court denied

both parties' motions for summary judgment without prejudice,

and set a deadline for the parties to file renewed motions. ECF

No. 88. Moynihan then conducted additional discovery. See ECF

Nos. 93, 94. Eventually, both parties filed the instant motions

for summary judgment. ECF Nos. 98, 99.


## III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine

dispute as to any material fact and the moving party is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion

for summary judgment will not be defeated by 'the mere

existence' of some disputed facts, but will be denied when there

---

Moynihan's request for access to and permission to use the
Court's electronic filing system, CM/ECF, even though Moynihan
is not an attorney. See ECF No. 13. Similarly, the Court has
granted him multiple extensions and provided him with free
transcripts. See, e.g., ECF Nos. 25, 57, 93, 97. Additionally,
the Court permitted Moynihan to use courtroom space to take
depositions, and permitted him to record depositions with his
phone. See ECF Nos. 77, 78, 93.

is a genuine issue of material fact." <u>Am. Eagle Outfitters v.</u>
<u>Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)). A
fact is "material" if proof of its existence or nonexistence
might affect the outcome of the litigation, and a dispute is
"genuine" if "the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at
248.

The Court will view the facts in the light most
favorable to the respective nonmoving party. "After making all
reasonable inferences in the nonmoving party's favor, there is a
genuine issue of material fact if a reasonable jury could find
for the nonmoving party." <u>Pignataro v. Port Auth.</u>, 593 F.3d 265,
268 (3d Cir. 2010). While the moving party bears the initial
burden of showing the absence of a genuine issue of material
fact, meeting this obligation shifts the burden to the nonmoving
party who must "set forth specific facts showing that there is a
genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250.

The guidelines governing summary judgment are
identical when addressing cross-motions for summary judgment.
<u>See</u> <u>Lawrence v. City of Phila.</u>, 527 F.3d 299, 310 (3d Cir.
2008). The Court will consider each party's motion on an
individual and separate basis. <u>See</u> <u>id.</u>

**IV. DISCUSSION**

    A.   <u>ADA discrimination</u>

      Under the ADA, employers are prohibited from discriminating "against a qualified individual with a disability <u>because of</u> the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (emphasis added). The ADA also provides that discrimination occurs when an employer does "not mak[e] reasonable accommodations to the <u>known</u> physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 F.3d 296, 306 (3d Cir. 1999) (quoting 42 U.S.C. § 12112(b)(5)(A)) (emphasis added).

      In order for a plaintiff to establish a prima facie case of discrimination under the ADA, the plaintiff must show (1) he or she is a disabled person within the meaning of the ADA; (2) he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he or she has suffered an otherwise adverse employment decision <u>as a result</u> of

discrimination. <u>Id.</u> (quoting <u>Gaul v. Lucent Techs.</u>, 134 F.3d 576, 580 (3d Cir. 1998)) (emphasis added).

B.  <u>Moynihan's motion for summary judgment</u>

1.  *Admissions*

As a threshold matter, the Court notes that Rite Aid served Moynihan with requests for admission on November 29, 2017. These requests for admission included, <u>inter alia</u>, a request that Moynihan admit that "[he] never informed Rite Aid that [he] suffer[s] from Asperger's Syndrome during [his] employment with Rite Aid." Request 12, ECF No. 49-2. Under the Federal Rules of Civil Procedure, a request is deemed admitted if the party upon who the request is served does not provide a response or objection within thirty days. Fed. R. Civ. P. 36(a)(3). Moynihan did not respond or object within this period, prompting Rite Aid to move the Court to deem the requests for admissions admitted. ECF No. 49. The Court denied Rite Aid's motion in that such a motion was not necessary because, under the rules, the matters were automatically admitted, unless the Court were to permit their withdrawal or amendment. ECF No. 54 (citing Fed. R. Civ. P. 36(b)). In the same order, the Court explained that "[a] plaintiff [such as, in this case, Moynihan] wishing to withdraw admissions may make such a motion with the Court." <u>Id.</u> at n.2. However, Moynihan never moved to withdraw

his admissions. Accordingly, his admissions remain binding on him.

The admissions are independently sufficient grounds to deny Moynihan's motion as to his claims regarding his termination. This is because Moynihan has admitted that he never informed Long, the decision-maker, of his disability prior to his termination.[2] See Taylor, 184 F.3d at 306; see also Jones v. United Parcel Serv., 214 F.3d 402, 406 (3d Cir. 2000) ("It is, of course, an axiom of any ADA claim that the . . . employer be aware of the disability."). Still, in the interest of completeness, the Court's analysis goes further.

2.    *Moynihan's arguments*

Moynihan summarily contends that he is entitled to summary judgment because Rite Aid fired him and refused to rehire him even though he is disabled. Pl's Mot., ECF No. 99. However, Moynihan does not point to, and the Court has not identified, any evidence that anyone from Rite Aid took any actions as a result of Moynihan's disability. In fact, Moynihan does not argue that anyone from Rite Aid did anything because of his disability. Rather, his position is that he missed shifts because of his disability, and that Rite Aid fired and refused to rehire him even though he is disabled. E.g. id. at ¶ 4 ("I

_____

[2]      Moynihan has never suggested that Long or anyone else from Rite Aid could or should have known about his disability (or any need for accommodations) without his disclosure.

did disclose my disability to Rite-Aid, but [ ] they terminated me anyway."). Thus, even assuming that all relevant persons at Rite Aid were aware of his disability at all relevant times, Moynihan has failed to establish that he was subject to adverse action as a result of discrimination.

Moynihan also argues that he is entitled to summary judgment because Rite Aid has not produced an expert witness to refute the testimony that he anticipates his psychologist, Dr. Milks, would offer were this case to proceed to trial. See generally Pl's Mot., ECF No. 99; Pl's Br., ECF No. 104. In support, he points to a letter written by Dr. Milks after he was fired, which he planned to share with Rite Aid. See Dr. Milks Letter, Pl's Mot. Ex F., ECF No. 99-27 (certifying Moynihan's diagnosis of Asperger's Syndrome and discussing his related needs); see also Pl's Mot. ¶ 7, ECF No. 99 ("[A]fter Rite-Aid refused to rehire me with accommodations, my therapist, Dr. Milks, produced a letter for me to present to Defendant Rite-Aid's Human Resource Department."). Regrettably, Moynihan misapprehends the issue; Dr. Milks' letter addresses the fact of his disability and its effects, but these facts are not contested in this case. Therefore, Rite Aid was not required to produce an expert to refute Dr. Milks' proffered testimony. Accordingly, the Court will deny Moynihan's motion.

C.  <u>Rite Aid's motion for summary judgment</u>

Turning to Rite Aid's motion, it contends that it is entitled to summary judgment on the basis of the admissions, and because there is no evidence that it took any actions as a result of Moynihan's disability. <u>See generally</u> Def's Mot., ECF No. 98.

1.  *Admissions*

First, the admissions are independently sufficient grounds to grant Rite Aid' motion as to Moynihan's claims regarding his termination because has admitted that he never informed the decision-maker of his disability prior to his termination. <u>See</u> <u>Taylor</u>, 184 F.3d at 306; <u>Jones</u>, 214 F.3d at 406; <u>see also</u> § IV(B)(1) <u>supra</u>. Still, the Court once again goes further with its analysis.

2.  *Knowledge of disability*

It is uncontested that Moynihan informed Long about his disability <u>after</u> Long terminated his employment, when Moynihan requested that he be rehired. Additionally, as discussed in § I <u>supra</u>, Moynihan contends that he orally disclosed his disability to Winston. Although it is not entirely clear whether Moynihan believes that he told Winston about his disability prior to being fired, even if he did so, Winston was not the person who made the decision to fire Moynihan. Rather, as mentioned, the decision-maker was Long, and Moynihan has

never contended that Long knew about his disability prior to firing him. Moreover, there is no evidence in the record that Winston ever communicated information about Moynihan's disability to Long or anyone else. Without such evidence, that knowledge cannot be imputed to Long. See Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 954 (3d Cir. 1996).

In Olson, a supervisor named Sansoni asked a job applicant, Olson, numerous questions about his health and medical history. See id. at 950-51. After the interview, Sansoni gave a recommendation to his superior, Eggert, that she hire an applicant other than Olson. Id. at 950. Eggert did so, and Olson brought suit for disability discrimination under the ADA. Id. The district court granted summary judgment for the employer. On appeal, Olson argued that because Sansoni reported to Eggert, a reasonable factfinder could conclude that Eggert was aware of Olson's health problems. Id. at 954. The Third Circuit rejected that argument and held, inter alia, that knowledge of Olson's alleged disability by Sansoni could not be imputed to Eggert, the decision-maker, based on speculation, and therefore was insufficient to raise a genuine issue of material fact. Id.; see also Straining v. AT&T Wireless Servs., Inc., 144 F. App'x 229, 232 (3d Cir. 2005) (not precedential) ("[K]nowledge of one party cannot be imputed to another who is making the [allegedly discriminatory] decision.") (citing Olson, 101 F.3d at 954).

Accordingly, even if Moynihan disclosed to Winston prior to being terminated, this disclosure does not equate to the requisite knowledge of Long, the decision-maker, because there is no evidence in the record that Long had any inkling that Moynihan was disabled until he made the post-termination disclosure and request for reinstatement. Moreover, Moynihan has never contended that Long knew he was disabled until <u>after</u> Moynihan was fired and requested that he be reinstated.

3. *Discrimination "as a result of" disability*

Even aside from the knowledge issue, there is no evidence in the record that Moynihan was terminated or not rehired for any reason other than missing two scheduled shifts during his probationary period. Although Moynihan is acting pro se, he is not relieved of his obligation to present evidence that a genuine issue of material fact exists. Moreover, Moynihan has not argued that anyone at Rite Aid did anything, such as firing or refusing to rehire him, <u>as a result</u> of his disability. <u>See, e.g.</u>, Pl's Mot. ¶ 4, ECF No. 99 ("I did disclose my disability to Rite-Aid, but [ ] they terminated me anyway."). Rather, his position is that his disability caused him to miss shifts, and he was fired even though he was disabled. Thus, Moynihan has not shown that he experienced an "adverse employment decision as a result of discrimination." <u>Taylor</u>, 184 F.3d at 306.

Finally, even if Moynihan had done so, Rite Aid has articulated a legitimate, non-discriminatory reason for its actions: that Moynihan missed two shifts during his probationary period. <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). Once Rite Aid has articulated such a reason, Moynihan, to survive summary judgment, "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Rite Aid's reason that the Court could "rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." <u>Olson</u>, 101 F.3d at 951 (citing <u>McDonnell Douglas</u>, 411 U.S. at 802). Moynihan has failed to do so. Accordingly, Rite Aid is entitled to judgment as a matter of law.

**V.    CONCLUSION**

For the reasons set forth above, the Court will deny Moynihan's motion, and grant Rite Aid's motion.

An appropriate order follows.